UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE: *

PETER A. STEVENS, JR. *
DEBRA R. STEVENS                Case No.: 18-15716 RAG
                               *   Chapter 7
      Debtors.
                               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B), (F), AND (M)

**COMES NOW** Brian A. Goldman (the "Trustee"), duly appointed Chapter 7 Trustee for the above-referenced debtor (the "Debtors"), and hereby files this motion ("Motion") for entry of an order authorizing the Trustee to sell certain real property free and clear of all liens, encumbrances, and interests. In support thereof, the Trustee respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested is 11 U.S.C. §§ 363(b), (f), and (m), and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### BACKGROUND

4. On April 29, 2018, the Debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

5. Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

6. The Debtors own real property, by virtue of a deed, located at 65 Lee Way, Elkton, MD 21921 (the "Property").

7. The Debtors scheduled the Property as having a value of $368,965.00 subject to a mortgage in favor of Shellpoint (the "Secured Creditor") in the amount owed on the Petition Date of approximately $363,599.65.

## RELIEF REQUESTED

8. The Trustee requests the entry of an order pursuant to Section 363 of the Bankruptcy Code approving the sale of the Property by Auction (as defined below), using the services of ADC (as defined below), free and clear of all liens, claims, encumbrances, and interests. Importantly, the Secured Creditor consents to the Property's sale and the creation of a carve-out fund (the "Carve-Out Fund") that will enable an opportunity for the costs of this case to be paid and potential recovery for other creditors. The Trustee seeks to sell the Property under circumstances that could yield no sale proceeds to the junior lien holders and requests that any creditor (other than the Secured Creditor) asserting an interest or secured claim against the Property timely assert and substantiate the basis for such asserted interest or secured claim. Absent affirmative objection to the proposed sale by any affected interests (junior lienholders or otherwise), the Court will authorize the sale of the Property free and clear of any such asserted interest or security interest, with such claims, at best, being treated as general unsecured claims.

## BASIS FOR RELIEF

### A. The Auction and Sale of the Property Should Be Approved

9. The Trustee seeks the Court's authority to sell the Property free and clear of all liens, claims, encumbrances, and interests, pursuant to the Auction procedures described below.

10. Pursuant to Section 363(b) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell, or lease property of the Debtors' estate other than in the ordinary course of business. The Court should approve the sale if the Trustee can demonstrate a sound business justification for the sale and if the sale process is fair, open, and reasonable. *See Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *see also In re Sarah's Tent, LLC*, 396 B.R. 571, 573 (Bankr. S.D. Fla. 2008). Further, Bankruptcy Rule 6004(f) contemplates sales outside of the ordinary course of business made by public auction.

11. The Trustee, through the services of Auction.com ("ADC"), intends to offer the Property for sale (the "Auction") following a 21-day multi-channel marketing campaign with exposure on Auction.com, Trulia and Zillow. During the 21-day marketing period, Ron Osher (the "Listing Agent") will also list the Property on the Multiple Listing Service and hold at least two open houses, to the extent possible. The Auction of the Property will commence after the 21-day marketing period per the advertised and applicable start and end dates/times. If the Property receives a bid that is sufficient to meet the reserve price, then the Property is sold to the winning bidder. If the reserve is not met by the end of the first Auction, then ADC will advertise a second Auction to commence one week later. If the reserve price is not met at the second auction, ADC will advertise and commence a third Auction one week later. In summary, unless the reserve price is met, ADC will run three consecutive Auctions in three consecutive weeks in order to provide the Property with sufficient exposure to the marketplace. If the reserve price is not met at the third Auction, the Secured Creditor will then utilize its right to purchase the Property by credit bid. As part of this process, there will be auction procedures, described below, to maximize the value of the Property.

12. The Auction will facilitate a sale that is in the best interest of the creditors of the bankruptcy estate. As such, the Trustee, in the exercise of his business judgment, submits that the sale price resulting from the Auction will be fair and reasonable.

13. The Trustee and ADC will use the following procedures to conduct the Auction and sale of the Property.

- **Property to be Sold**: The Property that is offered at the Auction shall be sold pursuant to Section 363 of the Bankruptcy Code free and clear of all liens, claims, encumbrances, and interests.

- **The Auction Date**: The first "Auction Date" shall not be set until entry of an order by the Bankruptcy Court approving the Motion to Sell. The first "Auction Date" shall be a date selected by ADC that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

- **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder. The registration form shall, among other things: (i) contain such information as reasonably requested by ADC to identify the potential bidder; and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) _not_ be charged, if the bidder is not the winning bidder, (b) _not_ be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may _be charged_, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction. The Secured Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit. ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

- **Bid Procedure**: Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "Secured Creditor Notice") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code. The Secured Creditor Notice shall also include

4

the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "Reserve Price"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "Opening Bid"), which may be less than the Reserve Price; and (iii) the bidding increment(s) ("Bidding Increments") for each round of bidding after the Opening Bid.[1] The Bidding Increments may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding. The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[2]

- **Winning Bid Amount**: The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

- **Buyer's Premium**: In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "Buyer's Premium"). ADC shall not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

- **Total Purchase Price**: The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

- **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "Commission"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; provided, however that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

- **Carve-Out Fund**: In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that: (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission, or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively, the "Standard Carve-Out"); provided however that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission, nor shall it exceed $50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "Surplus") shall be retained by the Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor consents to paying the Trustee an amount equal to the Short Surplus Amount plus the Surplus; and (3) the Trustee shall be reimbursed by the Secured Creditor for any liability insurance expenses incurred by the Trustee.

- **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.[3]

- **Sale Documents**: Promptly following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "Sale Documents").

14. Accordingly, the Trustee submits that the sale of the Property pursuant to the above Auction process is reasonable under Section 363(b) of the Bankruptcy Code.

---

[3] Acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed. All rights are reserved.

### B. The Sale of the Property Should Be Approved Free and Clear of All Interests

15. Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee may sell property free and clear of any interest in such property in an entity other than the estate if (1) permitted under applicable non-bankruptcy law; (2) the party asserting such interest consents; (3) the interest is a lien and the purchase price at which the property is to be sold is greater than the aggregate value of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See In re Smart World Techs.*, LLC, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests . . . It thus allows purchasers . . . to acquire assets [from a debtor] without any accompanying liabilities."); *see also In re MMH Auto. Group, LLC*, 385 B.R. 347, 367 (Bankr. S.D. Fla. 2008).

16. The Trustee states that he shall satisfy Section 363(f)(2) of the Bankruptcy Code because the Secured Creditor consents to a sale of the property under Section 363(f)(2) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests.

17. The Trustee requests that any creditor (other than the Secured Creditor) asserting an interest or secured claim against the Property—including but not limited to all creditors listed in the Debtors' Schedule D—after proper notice is given, be required to timely assert and substantiate the basis for such asserted interest or secured claim by filing and serving responsive papers no later than five (5) days prior to the hearing on this Motion, or the Court will authorize the sale of the Property free and clear of any such asserted interest or security interest, with such claims, at best, being treated as general unsecured claims.[4] Failure to object after proper notice and opportunity to object is deemed consent. *See BAC Home Loans Servicing LP v. Grassi*, 2011

---

[4] The Trustee reserves the right to dispute the alleged amount of any such claims.

7

WL 6096509 (1st Cir. BAP Nov. 21, 2011); *Citicorp Homeowners Servs., Inc. v.* Elliott, 94 B.R. 343 (E.D. Pa. 1988); *In re* Gabel, 61 B.R. 661 (Bankr. W.D. La. 1985); *Futuresourse LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir.); *In re Harbour E. Dev., Ltd.*, 2012 WL 1851015, at *12 (Bankr. S.D. Fla., May 21, 2012).

18. Accordingly, under Section 363(f)(2) of the Bankruptcy Code, the Trustee seeks authority to sell the Property free and clear of all liens, claims, encumbrances, and interests.

19. The Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) if applicable, the lesser of any HOA fees accrued post-petition or the equivalent to twelve months' assessments; and (3) all closing costs excluding professional fees. Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

C. **The Sale Will Be Undertaken by the Buyer in Good Faith**

20. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Section 363(b) was later reversed or modified on appeal.

21. The sale should be found to have been in good faith if the Trustee can demonstrate the transaction occurred at arm's-length and without fraud or collusion. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (citation omitted)); *see also In re Lorraine Brooke Associates, Inc.*, No. 07-12641 2007 WL 2257608 (Bankr. S.D. Fla. Aug. 2, 2007) (holding that a

sale was entitled to the protections of Section 363(m) of the Bankruptcy Code when it was based upon arm's length bargaining and without collusion).

22. The Trustee asserts that the sale of the Property pursuant to the Auction will utilize a competitive and transparent marketplace that facilitates an arm's-length sale without fraud or collusion. Accordingly, the Trustee respectfully requests that the Court find that the purchaser(s) will be entitled to the protections of Section 363(m) of the Bankruptcy Code.

23. The Trustee further states that:

    (a) the Trustee has reviewed the tax implications of the proposed Sale;

    (b) the Trustee has determined, based upon a review of the Debtors' schedules and information derived from the 341 meeting, that there will be a meaningful distribution to allowed creditors based upon the understanding that the final sale price and the total dollar amount of claims to be filed in this case are both unknown and can only be estimated at this time; and

    (c) given the information available at this time, the Trustee has made an educated evaluation and determined that the proposed Sale is in the best interest of the estate and its creditors.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter orders approving the sale of the Property pursuant to Section 363 of the Bankruptcy Code.

DATED this 11th day of October 2018.

Respectfully submitted,

/s/ Brian A. Goldman
Brian A. Goldman
Federal Bar No.: 00998
Goldman & Goldman, P.A.
Foxleigh Building
2330 West Joppa Road, Suite 300
Lutherville, Maryland 21093
bag@goldmangoldman.com
(410) 296-0888

Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that on October 11, 2018, a copy of the foregoing Application was served via this Court's CM/ECF notice system to:

Lisa M. Blackson, Esquire
John P. Downs, Esquire
Downs, Beste & Blackson, LLC
202 East Main Street
Elkton, MD 21921

Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707

I hereby further certify that on October 11, 2018, a copy of the foregoing Application was served via first-class mail, postage prepaid, to:

Office of the U.S. Trustee
101 West Lombard Street
Garmatz Courthouse, Suite 2625
Baltimore, MD 21201

Shellpoint
PO Box 10826
Greenville, SC 29603

10

Auction.com, LLC,
1 Mauchly
Irvine, CA 92618

Ronald M. Osher
Long & Foster Real Estate, Inc.
10801 Tony Dr.
Lutherville, MD 21093

Mr. Peter A. Stevens, Jr.
Ms. Debra R. Stevens
65 Lee Way
Elkton, MD 21921

/s/ Brian A. Goldman
Brian A. Goldman, Trustee